and I'll turn to 20-4059 Peterson v. Williams. Mr. Lusty, please. If you'll proceed. Thank you, Your Honor. Can all members of the court hear me? Yes. All right. May it please the court. This is a free speech case, and it's a free speech case involving a public employee, which is a subject that is fairly regularly litigated and comes before this court and other courts across the country with some regularity. The facts are fairly straightforward in that Professor Peterson was highly critical of DSU's leadership and administration with respect to the way the termination of another professor, Barlow Davenport, had been handled. And Professor Peterson was particularly critical that due process rights with respect to Professor Davenport were not followed and that the administration was acting largely unfairly, largely in contravention of how a good university ought to be run. Related to this, Professor Peterson also expressed criticisms regarding the leadership of the music department under Mark Hauser and particularly the quality of performances under Mr. Hauser. And these criticisms were primarily voiced through what I'm going to call in-person communications, meaning that they were not necessarily in any formal setting, they were not necessarily broadcast, but they were voiced, they were voluble, and they were known to the administration. And the administration took retaliatory actions. They terminated him. Pursuant to the faculty review hearing process, the faculty review board said he should not be terminated. This ultimately went to the State Board of Higher Education, because the president of DSU recused himself from the determination. And the state board said, reinstate Professor Peterson, give him a last chance letter, to which DSU provided a very broadly worded last chance agreement that said essentially Professor Peterson should never say anything that DSU disliked ever and forever, otherwise he'd be immediately terminated. The district court below dismissed Professor Peterson's complaint, primarily addressing two issues under the Garcetti analysis, the first being whether Professor Peterson was speaking within the course of his official duties, and second, whether this raised a matter of public interest. Now, there was also some analysis by the district court on whether the last chance agreement was a prior restraint. But I think the crux of the case really comes down to official duties and to public interest. Now, we would argue, Your Honor, on the pursuant to official duties issue. For a court to determine whether a statement was pursuant to official duties, don't we need to know some specifics about the statement, who it was made to and what the context was? Can you escape dismissal on the pleadings, much less summary judgment, simply by vaguely saying the statement was made to various people at various times? Yes, Your Honor. So I think that the issue there is, the allegation was that these statements were made through in-person communications to members of the community. What's intended by that statement is that community members are not administrators. They're not fellow professors. They're people largely within Dixie State's community, students, perhaps faculty, perhaps, but in an informal... We don't know. How do we know that? How do we know that from reading the complaint? How do we know what the intent was? We don't. We don't know. We only know you've alleged members of the community. That could be any community. It could be his peers. It could be his supervisors. It could be officials within the university. It could be people outside the university. We don't know. Well, I think within the context of the complaint, Your Honor, and drawing the... What's the word I'm looking for? Not implications. Inference. Inference, thank you, Your Honor. Drawing the inferences in favor of the pleader, I think that you can infer that members of the community means members of Peterson's community, including Washington County, including his kind of what we might call a social network, including his professional network, admittedly. How would we infer that? I don't understand how we would infer that. Well, I think that... There's lots of communities, lots of different communities. And he's certainly alleged a number of his statements or his speech was made within the university community. Yes, Your Honor, but I think that the inference from the word community reaches larger than just one's work community. And I think it's fair to take the inference that any person who speaks is necessarily going to speak in a 360-degree way when they say community. And that's not just going to... You say it's fair to infer that. I would think it's fair to impose on a plaintiff who has the burden of establishing all the elements of the Garcetti-Pickering test, that it has a burden to give the specifics so that test can be applied. That seems fair to me. And you didn't... The complaint, at least from what I've heard so far, doesn't satisfy that burden. You may be absolutely right that these statements were not pursuant to job duties. I might be very sympathetic to that, but I can't express my sympathy if I don't have any facts. Well, yes, Your Honor, I think so. A short and plain statement of the facts has been made. And I think we have to take the inferences in favor of the pleader. And I think that it's fair from context, Your Honor, to assume that community is a broader term than work community, is a broader term than colleagues, is a broader term than some other word that we may use to limit the intended audience of the speech. There are lots of implications here. I mean, if it's a statement to a friend while they're out jogging one day, that's probably not pursuant to job duties. But it's also hard to see how that caused any retribution by the university. We just, I mean, in a libel case, you have to say who was told what, when, and with some specificity. I'm pretty confident that that's a requirement for complaint libel. And you say a short, plain statement, but we've got Iqbal and Twombly. Can we draw the plausible inference? And you can't draw a plausible inference. We don't say you can draw a plausible inference just because the allegations in the complaint are so vague that any inference is possible. Well, I think also, though, Your Honor, that I think where the inferences can be taken is also how the district court did not necessarily stay at this issue. The district court did actually get into, well, what do I know about Peterson from the allegations? I know that he was a member of various disciplinary committees. I know that he was a professor. The district court's analysis went much further than this, than just a simple Twombly analysis. Right. And that's true, that the district court appears to have gone outside the record here, or at least outside of your statement in the complaint of the job responsibilities. But that doesn't really help you in answering the question of what does the complaint say about the details of his speech. Even if the district court erred in going outside and talking about job responsibilities and what the scope of his responsibilities were, we still need the complaint to state why that speech was within the scope of his official duties and why it was a matter of public concern. Do you see what I'm saying? Well, yes, Your Honor, and I think that this goes to the inferences that can be drawn from the statements that have been pled, because with great respect for Judge Benson and his legal mind, he made those inferences and then went further and made that analysis. I think you're arguing it was error for him to make those inferences, correct? Well, I think I'm arguing it was error that some of the interpretation he gave of the case law, particularly of Brammer and of Casey and some of the others, was misinterpreting that case law and misapplication of that case law in light of the inferences and in light of where he drew the analysis from the complaints as they were pleaded. Okay. Well, let's move on to public concern, if you don't mind. Assuming we can infer, as you're suggesting, that his speech fell outside the scope of his official duties, how did it address a matter of public concern? Because the district court alternatively went to the second prong and said it doesn't address a matter of public concern, and I saw one paragraph in your complaint, and that was paragraph in your actual, I don't remember if it was count one or not, but it was paragraphs 49 to 50, I think, or two paragraphs. And you say that it expressed public concern because he was expressing criticism of the competence of Hauser, a public employee, and we've said pretty clearly that allegations about a supervisor's or co-employee's competence aren't matters of public concern, so I'm not sure how that gets us there. And then you also say he expressed concern about the justness of defendants' actions in terminating Davenport. I don't see how the justness of defendants' actions, without more, would assert a matter of public concern as opposed to just a fairness question, an internal dispute about the fairness of Davenport's termination. So I'd like you to address how your allegations address matters of public concern. With respect to the competence of Hauser, I think that ties into his leadership, Your Honor, of the music department. And specifically with respect to the leadership of the music department, you know, when we take some of the case law that says public concern in this context is anything that touches, you know, the broader political or social interest of the community. When we look at the context of the complaint, this is to do with Dixie State University in Washington County. Their music department is a matter, or it is an area of central import to the artistic community in Washington County. And whether a public official is properly leading that music department, I think it is fair to say that touches on, and it's fair to infer that touches on, the quality of artistic entertainment or artistic production in the area, but also the quality. Stop. I mean, again, I think what you're doing is you're saying that your allegation, which is all we've got, which is he expressed criticism of the competence of Hauser. That, we're going to make a lot of inferences then about trying to extend that out to affecting the community. But that's not in that paragraph where you specifically allege what the matter of public concern was. But you're asking us once again to infer from that. I do think that is a fair inference when you say, hey, I think that this person who's charged with leading this department is not doing a good job. And that would affect the quality of education in the community and the quality of artistic performance. I do think, Your Honor, that is a fair inference from that allegation. Well, it also has to be the primary concern. And certainly he had concerns that didn't involve the community, it sounds like, that involve internal matters within the university, right? Well, I think that it's fair to infer from the allegation that Peterson was critical of the justness of the termination of Professor Davenport does go to larger concerns about, you know, was this termination. I think just means a lot more than just, you know, was it not was it nice? Was it cruel or mean to Professor Davenport? I think that there were large concerns expressed when we say the justness that his termination was in violation of due process rights. His termination does not fairly affect the faculty, does not, or excuse me, touches on faculty administration relations, which I think you can say in some degree. Well, that may be matters of public affairs, but there's certainly precedent from, you know, Schreier, which is a precedent in this court, which says, well, you know, the objectives, the purpose, the mission of a university matter. And certainly amicus pointed out that, you know, the AAUP, for example, has taken the position that, you know, the composition of the faculty, the way the faculty is disciplined, the way they can engage in their expressive conduct in their speech, that reaches beyond what we would say is, you know, cabin to a matter of internal or merely of internal concern. I mean, the AUP is there to protect professors. There's nothing wrong with that, but that's not necessarily a public concern. If it's a matter of instruction, I don't think and making sure that there's a free flow of ideas in the university. That's probably very much a matter of public concern, but that's not an issue here. We're not talking about instruction. It seems to me what you're talking about is a personnel issue. And do you have any cases suggesting that a personnel issue in a public institution is a matter of public concern? And your time's expired, but I'll give you a moment to respond. Yes, your honor. Thank you. Well, I think that what the AUP was expressing, I think, does, in fact, directly answer that question, which is when there's a discussion of tenure, when there's a discussion of, you know, the composition of the faculty that cannot be extracted from matters of academic expression, because tenure is certainly one of those things that enables faculty to engage in instruction and to engage in inquiry. And I think that that's something that Justice Souter's dissent in Garcetti, you know, really picked up on is that. And although that was speaking more to, you know, should we even have a public or official duties exception in Garcetti? But it was. The the composition of the faculty cannot so easily be separated from these matters. My time has expired. Your honor, with that, we'll submit our argument. Thank you, counsel. Ms. Stone. Thank you, your honor. May it please the court. Peggy Stone, assistant Utah solicitor general on behalf of the Dixie State University defendants. The district court should be affirmed here. Professor Peterson's complaint failed to plausibly allege a First Amendment retaliation claim. And the district court recognized that. And this court's precedents make it pretty clear that under the Garcetti Pickering analysis, the first prong of that official duty test is a very heavy barrier. And this court has always taken a very broad view and of the meaning of speech that falls within someone's official duties. And similarly and actually in contrast, this court's precedents have also quite narrowly, in fact, limited the scope of what is a matter of public concern by saying that internal grievances and and if and personality and even the internal structure of a university. That's the Bunger case are not matters of public concern. Well, let's let's start with the first first prong of Garcetti Pickering. What the district court here, as far as I can see, it looked well beyond the complaint in discussing what Mr. Peterson's job responsibilities were. The complaint only specified his duties were instructing students in the vocal arts and music, assisting on an extracurricular basis in the production, staging and musical performance. That's what the complaint asserted. Right. Do you agree that the district court erred by by by discussing and inferring the scope, essentially inferring the scope of his duties as far as his membership committees and and what those duties might be that we don't know from the complaint? No, your honor. And there are several reasons for that. First of all, the complaint itself references Professor Peterson's first in the initial termination letter. And I understand that and references the doctor hitches decision. That's appendix 12. It references the in fact, with the termination letter, it quotes part of it. OK, so even if it references those and even if we assume that those documents can be essentially incorporated into the complaint, how does that still support the district court's analysis of what his actual job duties were? Because he contests, of course, he contests the contents of the of the letter. Well, he contested the he contested whether the speech that he was allegedly disciplined for violated university policy and the and the extent of the punishment. But I don't think he that he contested what the speech actually was. OK, what did I'm talking about? The job duties. Which one of those documents that you referred to that you say are incorporated apparently into the complaint discussed in any detail his job duties or this particular speech in in conjunction with those job duties? Well, I think that would be Dr. Hitch's decision and the and the termination letter. What did Dr. Hitch's decision say? The district. Oh, well, let me take a step back. The district court referenced the allegations of the complaint that because of his tenure and faculty privileges, he was on several committees. And then from the termination letter, it's clear that one of the committees that he was on was the tenure and retention committee. OK, so let's which which one of those documents supports that he was on these committees? That would be the termination letter. And what does it say exactly? The termination letter. Mentioned his. I am not immediately finding that. Let's see. Disclose confidential information about Mark Hauser's employment and list that he was a member of the. Is faculty the tenure committee and also and this is that. Well, I don't have the it's at the record in the appendix, 66 to 70 appendix, 57 to 63 and appendix 124 to 26. Dr. Hitch's letter also mentions his membership on the tenure committee and review committee. And where do those and I guess I'm still trying to get you to answer my question. Where do those documents discuss. His job responsibilities and the connection of those responsibilities with his speech here, I guess, is what I'm trying to find. And I don't think they do. And I guess that's my point. I don't see how the district court could could make those inferences from the allegations in the complaint. Well, just the inference that from from the complaint that he was on committees and then the references in those letters to his membership on those committees. And where he's discussing that the speech that Professor Hauser shouldn't get tenure and is not an appropriate leader for that department. And that using that speech to try to convince colleagues not to give Hauser tenure. So in some ways, if if the district court erred, I don't think it did by going through that information. I think that there's enough to make those inferences when the complaint is pretty much silent on that. It isn't the answer the argument that you did. I didn't see that you made because the complaint is silent on that. The plaintiff hasn't met his burden, not that the district court, because the complaint is silent on that can infer facts. Well, and that's and that isn't that the argument you probably should be making. But I didn't see that you made as an alternative to. Well, I tried and maybe I wasn't as articulate when I was explaining the Twombly standard for facial plausibility. And that's that is part that there's not enough there to get the inferences that we need or that the district court needed. And so it went beyond to try to flesh that argument out. But it didn't err in doing so. And and in fact, the Professor Peterson has never objected to the inclusion of those other documents below or now. So I don't think it's an error that would require reversal. If it were an error. Council, before you go on, can I get you to address the public concern prong? Sure. Regarding public concern. This case is a lot like the Leighton versus University of Utah case where there the this court held that the speech wasn't a matter of public concern. There the speech was a colleague was misusing equipment. And this court said that those complaints were more along the lines of of a vendetta trying to influence and harm or get a result from colleagues. Here, the running of the different department and his dissatisfaction and Professor Peterson's dissatisfaction with that falls like light. It is in some respects like the Brammer Hall or one case where they're complaining about resignations of other teachers and how those other teachers have the circumstances under which those teachers left. It's just a matter of internal grievance and personnel. Can I just stop you there and ask you to directly address your opposing counsel's argument, which is the leadership of the department here is very important to the community. It impacts community and how performing arts and you can go on how that arts community thrives or doesn't thrive. So it's a larger issue than a personnel green grievance. Could I get you to look at that or tell me tell me why that is incorrect in your view. Well, first of all, all of those allegations about the importance of the arts community and and all of that. That's not in the complaint. We don't know any of that. There's no there's no factual basis in the complaint for that. So any time a university has a department, I mean, and it's going to the education of students, any department would be important. So but if the main purpose of the speaker is to just complain about who's running things, that's more the internal runnings of of the university, which, although it might have broader implications, even if the matter touches on those broad things, that would be a public concern. It doesn't reach and it doesn't satisfy this court's requirements for that. And that's the Bunger versus University of Oklahoma Board of Readers. So is it your position then that there was not a claim stated here, either under official duties or under public concern that the complaint fails to state a claim under either of those? Correct. And I would even go further to say that as as an alternative basis for affirmance, because the district court only stopped and found no plausible statement of a First Amendment claim. This court could actually go to the second prong of on the qualified immunity analysis on which is clearly established and follow the same case where, in that case, the court found that a reasonable administrator wouldn't have wouldn't have known that the matters that were bringing before it were a matter of public concern, but could have thought that it was just an it was internal grievances. And because that was reasonable, they were entitled to qualified immunity. How far does qualified? I'm not sure qualified immunity gets you very far in this case. There's a claim against the institution, Dixie State, and the individuals are sued in the both their personal and official capacities, aren't they? Right. But the claim against the First Amendment claim wasn't against the institution. It was just against the individuals and their individual capacities. The contract claim that the district court dismissed was a state claim against the university. So the First Amendment claim is only against the individuals and their personal capacities. That's my understanding, Your Honor. Yes, that in the prior restraint, the state, the university was in for a breach of contract claim, state claim, and the district court dismissed that without prejudice. What about the claims against the people in their official capacities? I think that they were there as part of the contractual claim. There's also there was also a conspiracy claim that might have. But that was a state. My understanding was a state conspiracy. Well, violation. So to the extent it was for violation of constitutional rights, that would have been a federal claim. So there was more than all of the First Amendment claims were not against the university because that the university itself would have been immune under the 11th Amendment. On the federal claims. Right. And that would be true. Also, of an official student is the official capacity. Yes. OK, well, that's that's good to know. But I'm going to ask Mr. Lusty if that's his understanding of the claims. Also, I'm happy to answer any further questions you have. But my time is almost up. So I'm happy to submit if you don't have anything further for me. OK, thank you. Well, we'll take your 28 seconds and give it to Mr. Lusty to answer who's been on the First Amendment claim are the only claims against the people in their individual capacities. Yet, Your Honor, let me just pull that up real quick. I, I didn't see an 11th Amendment issue mentioned. They're certainly named in the complaint in their official capacities. And I do anything disposing of a claim on the 11th Amendment ground. So, Your Honor, the first cause of action for wrongful termination under the 1983 action was all defendants was asserted against all defendants. And each of the individual defendants are asserted in their individual and official capacity. And then, Your Honor, and this is, oh, sorry, I don't have my docket stamped copy here to reference it for the record, but I am just citing the complaint. Was there any proceeding? Did the court ever talk about 11th Amendment immunity for Dixie State or for the individuals in their official capacities? No, Your Honor. That was never addressed? That was not addressed in the court's ruling. But in the court's order, it doesn't seem that it addresses that, but it does at the end, its conclusion, it says dismisses plaintiff's federal claims count one through three with prejudice. Correct. As to all defendants. So, but you're right. It doesn't talk about the 11th Amendment. And Your Honor, Your Honor, just to finish answering Judge Hartz's question, the second cause of action for the prior restraints was asserted against all defendants, as was the civil conspiracy count, Your Honor. Okay. Well, thank you. I always like to end on a puzzle. Okay. Thank you, counsel. Cases submitted by counsel are excused.